**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| ANGEL HERNANDEZ, | ) | No. ED CV 10-1215-PLA |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**I.**

**PROCEEDINGS**

        Plaintiff filed this action on September 3, 2010, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on October 1, 2010. The parties filed a Joint Stipulation on May 2, 2011, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

**/**

**/**

## II.

## BACKGROUND

Plaintiff was born on May 23, 1977. [Administrative Record ("AR") at 33, 105.] He has an eleventh grade education and has past relevant work experience as a maintenance worker. [AR at 15, 109-10, 113, 115-17.]

On May 6, 2008, plaintiff filed his applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that he has been unable to work since January 14, 2008, due to mental illness, disc herniations, and arthritis. [AR at 9, 33, 35, 87-95, 98-102, 105-14.] After plaintiff's applications were denied initially and on reconsideration, he requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 37-42, 45-49, 51.] A hearing was held on November 16, 2009, at which time plaintiff appeared with counsel and testified on his own behalf. Plaintiff's wife also testified. [AR at 16-32.] On December 22, 2009, the ALJ determined that plaintiff was not disabled. [AR at 6-15.] When the Appeals Council denied plaintiff's request for review of the hearing decision on July 17, 2010, the ALJ's decision became the final decision of the Commissioner. [AR at 1-3.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

IV.

**THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.**    **THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform

past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

## B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since January 14, 2008, the alleged onset date of disability.[1] [AR at 11.] At step two, the ALJ concluded that plaintiff has severe impairments of obesity and disc herniations at L4-L5 and L5-S1. [Id.] At step three, the ALJ concluded that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 12.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] "to perform the full range of medium work[3]." [AR at 13.] At step four, the ALJ concluded that plaintiff is capable of performing his past relevant work as a maintenance worker. Accordingly, the ALJ found plaintiff not disabled. [AR at 15.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to properly: (1) consider the severity of plaintiff's mental impairment at step two of the sequential evaluation; (2) consider the state agency physician's opinion; (3) determine plaintiff's RFC; (4) consider plaintiff's credibility; (5) evaluate

---

[1]    The ALJ also determined that plaintiff is insured for Disability Insurance Benefits purposes through September 30, 2008. [AR at 11.]

[2]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]    Medium work is defined as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

4

plaintiff's combined impairments and symptoms in determining whether his impairments equal the Listing; and (6) consider the mental demands of plaintiff's past work. [Joint Stipulation ("JS") at 2-3.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**A.    STEP TWO DETERMINATION**

Plaintiff contends that the ALJ erred in concluding at step two of the sequential evaluation that plaintiff's mental impairment is not severe. Specifically, plaintiff contends that the ALJ did not properly consider various medical records pertaining to plaintiff's mental impairment, including the treatment notes of treating physician Dr. Samuel E. Dey; the May 30, 2008, Mental Residual Functional Capacity Assessment ("MRFCA") of nonexamining physician Dr. Kelly J. Loomis; and the August 27, 2008, psychotherapy evaluation of Erica Herrera, M.F.T. Intern. [See JS at 3-5.]

A "severe" impairment, or combination of impairments, is defined as one that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520, 416.920. In assessing the severity of plaintiff's alleged mental impairment, the ALJ was required to reflect in the decision his consideration of plaintiff's mental functional limitations under four broad criteria (also known as the "paragraph B criteria"): 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation. See 20 C.F.R., Pt. 404, Subpt. P, App. 1, §12.00C; see also 20 C.F.R. §§ 404.1520a, 416.920a; (as amended by 76 FR 24802-01 (May 3, 2011)). If a claimant is rated as having greater than "mild" limitations in any of the first three criteria or more than no episodes of decompensation in criteria four, or if "the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability

to do basic work activities," then the claimant's mental impairment should be found to be "severe."[4]  20 C.F.R. §§ 404.1520a, 416.920a; see also 20 C.F.R. §§ 404.1521, 416.921.

From March 2008 to at least August 2008, plaintiff received psychiatric medication management treatment from Dr. Dey.  [See AR at 175-76, 201, 204.]  Although Dr. Dey's treatment notes indicate that plaintiff's symptoms of dysphoria, apathy, social isolation, social withdrawal, and anxiety improved somewhat while he was taking Celexa, Dr. Dey discontinued plaintiff's prescription for Celexa and instead prescribed Paxil because Celexa caused plaintiff to have diarrhea.  [Id.]  Plaintiff found Paxil to be "not very effective at relieving [his] target symptoms," and he stopped taking the medication at the direction of his doctor because it caused him stomach upset. [AR at 204.] Plaintiff reported feeling worse after he stopped taking Paxil, and Dr. Dey discussed "other possible approaches" to rectifying plaintiff's psychiatric problem, including prescribing Zoloft.  [Id.]

In a Psychiatric Review Technique form dated May 30, 2008, Dr. Loomis noted that plaintiff has the medically determinable impairment of Mood/Bipolar Disorder and analyzed plaintiff's mental functional limitations under the paragraph B criteria discussed above.  Specifically, Dr.

---

[4]    "The Supreme Court has recognized that including a severity inquiry at the second stage of the evaluation process permits the [Commissioner] to identify efficiently those claimants whose impairments are so slight that they are unlikely to be found disabled even if the individual's age, education, and experience are considered."  Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994) (citing Bowen v. Yuckert, 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)).  However, an overly stringent application of the severity requirement would violate the statute by denying benefits to claimants who meet the statutory definition of "disabled."  Corrao, 20 F.3d at 949 (citing Bowen v. Yuckert, 482 U.S. at 156-58 (O'Connor, J., concurring)).  Despite use of the term "severe," most circuits, including the Ninth Circuit, have held that "the step-two inquiry is a de minimis screening device to dispose of groundless claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S. at 153-54); see Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997) ("A claimant's showing at level two that he or she has a severe impairment has been described as 'de minimis'") (citation omitted); see also Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989) (evaluation can stop at step two only when there is no more than minimal effect on ability to work).  An impairment or combination of impairments should be found to be not severe only when the evidence establishes merely a slight abnormality that has no more than a minimal effect on an individual's physical or mental ability to do basic work activities.  See Corrao, 20 F.3d at 949 (citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)); see also SSR 85-28 ("an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities").

Loomis concluded that plaintiff has a mild functional limitation with regard to restrictions of daily living; has moderate functional limitations with regard to maintaining social functioning and concentration, persistence, or pace; and has had no repeated episodes of decompensation. [AR at 180, 183, 188.] Dr. Loomis further opined in a May 30, 2008, MRFCA that plaintiff had the mental RFC to understand, remember, and carry out one- and two-step instructions; maintain sufficient concentration, persistence and pace to complete simple tasks during a normal workday and workweek; and interact adequately with coworkers and supervisors, but that plaintiff "may have difficulty dealing with the demands of general public contact." [AR at 179.] Dr. Loomis indicated that his May 30, 2008, opinions were based on the mental status examinations and reported information in plaintiff's treatment record. [See AR at 192.] Another nonexamining psychiatrist, Dr. B.A. Smith, also concluded that plaintiff is limited to performing "unskilled non detailed tasks in a non public setting" (i.e., nonpublic, simple, repetitive, tasks). [See AR at 207.]

On August 27, 2008, plaintiff underwent a Psychotherapy Initial Evaluation conducted by Ms. Herrera, during which time plaintiff presented, among other symptoms, anger, depression, problems sleeping, irritability, mood swings, problems concentrating, distractability, low motivation, social withdrawal, feelings of worthlessness, racing thoughts, avoidance of people, anxiety, fatigue, and low frustration tolerance. [See AR at 202.] Ms. Herrera noted that plaintiff demonstrated appropriate speech with regular rate and rhythm; spontaneous stream of thought; intact associations and memory; no abnormal or psychotic thoughts; fair judgment, insight, attention span, and concentration; orientation to person, place, and time; and an ability to establish eye contact. Ms. Herrera further noted that plaintiff had an anxious mood and affect, dominated the conversation and talked excessively, and had scattered thoughts. Ms. Herrera diagnosed plaintiff as having "Bipolar Disorder, Most Recent Episode Mixed, Moderate" and assigned plaintiff a Global Assessment of Functioning ("GAF") score of 50.[5] [AR at 203.]

---

[5] A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 32 (4th Ed. 2000). A GAF score in the range of 41-50
(continued...)

In the decision, the ALJ analyzed plaintiff's mental impairment under the four paragraph B criteria discussed above and concluded that plaintiff had no episodes of decompensation and only mild limitations in the functional areas of activities of daily living; social functioning; and concentration, persistence, or pace. Accordingly, the ALJ determined at step two of the sequential evaluation that plaintiff's mental impairment is not severe. [AR at 11-12.] In reaching this determination, the ALJ noted that plaintiff "had some brief mental health treatment of a minimal nature in 2008," but concluded that the 2008 treatment records reflected that plaintiff's mental health had improved "even with the minimal treatment" and that the August 27, 2008, Evaluation "does not reflect severe mental limitations." [AR at 14.] The ALJ further concluded that the GAF score of 50 assessed by Ms. Herrera was "grossly excessive in its asserted limits and is unsupported by [plaintiff's] complaints or the mental status examination." [Id.] The ALJ also stated in the decision that he "disagree[d]" with the state agency physician's opinion that plaintiff should be limited to non-public, simple, repetitive tasks, as the ALJ concluded that the "mental health records reveal [plaintiff] only has mild mental limitations."[6] [Id.] The ALJ did not specifically address Dr. Loomis' opinion that plaintiff has "moderate" limitations under two of the four paragraph B criteria.

The ALJ's step-two determination that plaintiff's mental impairment is not severe is not supported by substantial evidence. First, the ALJ's conclusion that plaintiff's treatment notes reveal that his mental health improved with treatment in 2008 reflects a misreading or an improper selective consideration of the evidence. See Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001) (error for ALJ to "selectively focus[] on ... [evidence] which tend[s] to suggest non-disability"); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for ALJ to ignore or misstate competent evidence in order to justify his conclusion). Rather, Dr. Rey's treatment notes

_____

[5](...continued)
indicates serious symptoms or any serious impairment in social, occupational, or school functioning (e.g., unable to keep a job). Id. at 34.

[6]    It is not clear from the ALJ's decision if he intended to reject Dr. Loomis', Dr. Smith's, or both of the doctors' opinions.

8

reflect that plaintiff's psychiatric symptoms fluctuated during the time that Dr. Rey treated him, and, as was last noted by Dr. Rey in August 2008, had apparently worsened. [See AR at 175-76, 201, 204.] Dr. Rey's notes also show that plaintiff was directed to discontinue two different psychiatric medications due to negative side effects. [Id.] Thus, Dr. Rey's treatment notes do not constitute substantial evidence supporting the ALJ's step-two conclusion that plaintiff's mental impairment is not severe.

Next, the ALJ improperly rejected the state agency physicians' opinions on the basis that the ALJ "disagree[d]" that plaintiff's mental limitations were more than minimal because an "ALJ may not substitute his own layman's opinion for the findings and opinion of a physician." Gonzalez Perez v. Sec'y of Health & Human Servs., 812 F.2d 747, 749 (1st Cir. 1987); see also Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (an ALJ may not reject a physician's opinion based on "speculation or lay opinion"). The ALJ's assertion that plaintiff has no more than mild mental limitations, by itself, is an insufficient reason for rejecting Dr. Loomis' contrary expert opinion or Dr. Loomis' and Dr. Smith's expert opinions that plaintiff is limited to simple, repetitive, nonpublic tasks. See Social Security Ruling ("SSR")[7] 96-6p ("Findings ... made by State agency medical and psychological consultants ... regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources"). Rather, to properly reject Dr. Loomis' and Dr. Smiths' expert opinions, the ALJ was required to review the various factors set forth in the regulations for considering opinion evidence, including, among other things, the supportability and consistency of their opinions with the overall record. See 20 C.F.R. §§ 404.1527, 416.927 (as amended by 76 FR 24802-01 (May 3, 2011)); see also SSR 96-6p. As the Court finds that the ALJ misconstrued the medical treatment evidence concerning plaintiff's mental impairment, the ALJ's interpretation of that evidence (i.e., that plaintiff's mental health records

---

[7] SSRs do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

reveal only mild mental limitations) does not support his rejection of the nonexamining physicians' opinions.

Finally, to the extent the ALJ found plaintiff's alleged mental impairment to be not severe because the ALJ concluded that plaintiff sought only "minimal" or infrequent treatment, this reason is also suspect. The Ninth Circuit has "particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (internal quotations omitted). Accordingly, remand is warranted for the ALJ to reconsider the severity of plaintiff's mental impairment.[8]

**B.    RFC DETERMINATION**

Plaintiff contends that the ALJ erred in reaching the RFC determination because the ALJ failed to incorporate Dr. Loomis' opinion that plaintiff is limited to nonpublic, simple, repetitive tasks and did not provide adequate reasons for rejecting Dr. Loomis' opinion. [See JS at 7-11.]

In determining plaintiff's disability status, the ALJ had the responsibility to determine plaintiff's RFC after considering "all of the relevant medical and other evidence" in the record, including all medical opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); see SSR 96-8p, 1996 WL 374184, at *5, *7. Since the Court finds that the ALJ failed to properly consider the evidence concerning plaintiff's mental impairment -- including Dr. Loomis' opinions regarding plaintiff's mental limitations -- remand is necessary for the ALJ to reevaluate plaintiff's RFC once the ALJ has reconsidered the medical evidence as directed herein.

/

/

/

_____

[8]    As the Court finds reconsideration of the medical evidence pertaining to plaintiff's mental impairment warranted for the reasons expressed above, the Court will not determine whether the ALJ improperly rejected the GAF score of 50 assessed by Ms. Herrera.

**C.    PLAINTIFF'S CREDIBILITY AND LISTING § 1.04A**

Plaintiff argues that the ALJ improperly rejected plaintiff's credibility and subjective symptoms and failed to properly determine whether plaintiff's impairments equal § 1.04A of the Listing.  [See JS at 12-15, 18-21.]

**1.    Plaintiff's Credibility**

At the hearing, plaintiff testified that he was unable to work due to severe pain and stiffness in his lower back that significantly limits his mobility and ability to sit, stand, walk, and lift things.  [AR at 19-20, 23-24.]  Plaintiff further testified that his back problems result in numbness, weakness, and cramps in his legs, which have caused him to fall.  [AR at 19.]  Plaintiff also explained that he suffers from difficulty concentrating, mood swings, frustration, problems socializing, and depression as a result of his pain and the limiting effects of his back problems.  [AR at 20-22.]

In the decision, the ALJ stated that while he found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms ... [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment."  [AR at 14.]  As the Court concludes that reconsideration of the RFC determination is warranted, and the ALJ rejected plaintiff's credibility based, in part, on the ALJ's analysis of the medical evidence, which the Court finds erroneous for the reasons discussed herein, the ALJ is directed to reassess plaintiff's credibility after the medical evidence has been reconsidered.

**2.    Listing § 1.04A**

To make a proper step-three finding, "[a]n ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.  A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so."  Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001) (citing Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990)).  "The regulations ... require the Secretary to review the symptoms, and make specific findings essential to the conclusion. ... [The ALJ's] findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual

foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision." Gonzalez v. Sullivan, 914 F.2d 1197, 1200 (9th Cir. 1990) (quotations and citations omitted); see 20 C.F.R. §§ 404.1526(c), 416.926(c) ("When we determine if your impairment medically equals a listing, we consider all evidence in your case record about your impairment(s) and its effects on you that is relevant to this finding."). If a claimant has an impairment or combination of impairments that meet(s) or equal(s) a condition outlined in the Listing, then the claimant is presumed disabled at step three of the evaluation process, and the ALJ need not make any specific findings as to his ability to perform his past relevant work or any other jobs. See 20 C.F.R. §§ 404.1520(d), 416.920(d); Lester, 81 F.3d at 828.

To meet § 1.04A of the Listing, plaintiff must establish that he 1) suffers from a spinal disorder (such as herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) that results in compromise of a nerve root or the spinal cord; 2) has "nerve root compression characterized by neuro-anatomic distribution of pain"; 3) has "limitation of motion of the spine"; 4) has "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss"; and 5) has a positive straight-leg raising test, as he is claiming injury to his lower back. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

The medical evidence indicates that plaintiff has herniated lumbar discs at L4-L5 and L5-S1, displacement of the right S1 nerve root, mild bilateral foraminal stenosis, and mild spinal canal stenosis of the lumbar spine. [See AR at 218-19, 221-22, 225-27.] It appears that these impairments, in addition to plaintiff's complaints of back and leg pain (which are likewise documented in plaintiff's medical records) [see id.], may satisfy the first and second requirements of §1.04A. With regard to the third, fourth, and fifth requirements of § 1.04A, some of plaintiff's treatment notes reflect that he had limited range of motion in his lumbar spine [AR at 210]; experienced, among other symptoms, swelling, tingling, weakness, and numbness in his lower back, left buttock, and leg [AR at 228]; and had a positive straight-leg test for back and buttock pain. [AR at 219.]

In the decision, the ALJ asserted that plaintiff did not meet or equal § 1.04 of the Listing for disorders of the spine. Although the ALJ acknowledged the diagnostic evidence concerning plaintiff's lumbar spine herniations, the ALJ focused on medical evidence indicating that plaintiff retained adequate range of motion and had no neurological deficits. [AR at 13-14; citing AR at 198, 218-19, 225-27.] In doing so, the ALJ completely ignored the medical evidence indicating that plaintiff had limited motion, weakness, and numbness, as well as a positive straight-leg test. [See AR at 14.] The ALJ's selective consideration of the evidence in this regard constitutes error. Gallant, 753 F.2d at 1456. Since the ALJ did not expressly discuss all of the relevant evidence concerning plaintiff's back impairment and treatment, or how the combination of his impairments and functional limitations compare to the specific requirements of § 1.04A -- and it appears that plaintiff might meet at least some of these requirements -- the Court finds remand necessary for the ALJ to properly consider whether plaintiff should be found disabled at step three of the sequential analysis. See Dobson v. Astrue, 267 Fed.Appx. 610, 612 (9th Cir. 2008) (remanding ALJ's finding that the plaintiff's impairment did not meet or equal the Listing, where the ALJ failed to analyze the plaintiff's specific impairment and limitations according to the factors set forth in the Listing) (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3).[9]

## VI.

### REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate in order for the ALJ to reconsider the severity of plaintiff's mental impairment, the opinions of Dr. Loomis and Dr. Smith, plaintiff's RFC, plaintiff's credibility,

---

[9] As remand is warranted for the reasons discussed herein, the Court exercises its discretion not to address plaintiff's remaining contention of error.

and whether plaintiff's impairments equal § 1.04A of the Listing. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: May 12, 2011

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE